# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL NO. 1:06CV141

| | | |
|---|---|---|
| **WILLIAM H. GOURLEY, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **O R D E R** |
| **KEN WILSON FORD, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's motion for

summary judgment filed March 26, 2007. For the reasons set forth below,

the motion is allowed.

## I. PROCEDURAL HISTORY

Plaintiff filed his complaint on May 5, 2006, alleging that at the time of

his discharge on August 19, 2004, he was 59 years old and an employee

of the Defendant as a new car sales manager at its dealership in Canton,

North Carolina. **Complaint, at 1-2.** He alleges that he was replaced by a

29-year old female who had significantly less automobile sales experience

and was, therefore, less qualified for the position. *Id*. **at 2-3.** He alleges

that he was performing his job satisfactorily, had received no written or oral

criticism of his work, and was meeting the Defendant's legitimate job

expectations. *Id*. **at 2.** He alleges that his termination was a willful

violation of the Age Discrimination in Employment Act of 1967 ["ADEA"], 29

U.S.C. §§ 621 *et seq*. (First Claim for Relief); a violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.*, as amended (Second

Claim for Relief); and a violation of the North Carolina Equal Employment

Practices Act ["NCEEPA"], N.C. Gen. Stat. §§ 143-422, *et seq*., (Fourth

Claim for Relief) .[1] *Id*. **at 2, 4.**

On October 26, 2004, Plaintiff filed a formal charge of age and sex

discrimination with the Equal Employment Opportunity Commission

(EEOC). **Exhibit A, Charge of Discrimination,** *attached to* **Complaint.**

The EEOC investigated the Plaintiff's charge of discrimination and found

"reasonable cause to believe that violations of the statute(s) occurred,"

however, the agency declined to bring suit on the Plaintiff's behalf. **Exhibit**

---

[1] Plaintiff's claim of negligent infliction of emotional distress (Third Claim for Relief) was dismissed by the Court. **Order, filed August 15, 2006.**

**B, Notice of Right to Sue, dated February 7, 2006,** *attached to*
**Complaint.**

Defendant moved for summary judgment on March 26, 2007; Plaintiff filed his opposition thereto on April 9, 2007, and Defendant filed its reply to Plaintiff's response on April 23, 2007. Plaintiff moved to strike the Defendant's reply as untimely and Defendant has filed its opposition to that motion. **Plaintiff's Motion to Strike, filed April 24, 2007; Defendant's Response Memorandum in Opposition to Plaintiff's Motion to Strike, filed April 25, 2007.**

## II. FACTUAL HISTORY

From 1993 to the date of his discharge on August 19, 2004, the Plaintiff was employed by the Defendant as a new car sales manager on three separate occasions – January 27, 1993, to November 1, 1996; October 13, 1997, to October 18, 2001, and January 22, 2002, until his discharge in August 2004. **Exhibit 1, Declaration of Rodney Lee Lunsford,** *attached to* **Defendant's Motion for Summary Judgment, filed March 26, 2007, ¶¶ 6, 7, 10-12.** Plaintiff avers that he left the Defendant's employ on the two prior occasions in order to pursue other

employment opportunities because his agreed-upon pay plan was changed without his consent. **Affidavit of William H. Gourley, Jr.,** *attached to* **Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed April 9, 2007, ¶ 4.** Throughout his employment, Plaintiff was an at-will employee who was paid a salary plus commissions. **Deposition of William H. Gourley, Jr., taken February 15, 2007, at 27-28, 30-31; Lunsford Declaration, ¶ 38.**

As of August 2004, the Plaintiff had 30 years of experience in new car sales and understood how to maximize dealer profit. **Gourley Affidavit, ¶ 5.** Defendant admits there was no written documentation of poor job performance or other work-related problems in Plaintiff's personnel file. **Defendant's Memorandum in Support of Summary Judgment, filed March 26, 2007, at 10;** *see also* **Exhibit 1, Second Declaration of Rodney Lee Lunsford,** *attached to* **Defendant's Reply to Plaintiff's Memorandum in Opposition to Summary Judgment, filed April 23, 2007, ¶¶ 3, 5-6.** According to Plaintiff's supervisor, Plaintiff was terminated due to his "chronic tardiness, absenteeism, and repeated failures to perform required job duties." **Lunsford Declaration, ¶ 13;** *see also* **Plaintiff's Deposition Exhibit 3,** *attached to* **Plaintiff's**

**Memorandum,** *supra***.** According to Lunsford's sworn statement, he repeatedly counseled Plaintiff about these deficiencies and even warned Plaintiff that continued tardiness and absenteeism would result in his dismissal. **Lunsford Declaration, ¶¶ 16, 21, 24.** Plaintiff denies he received any verbal reprimand or warning. **Gourley Affidavit, ¶¶ 6-10.** After the discharge, Defendant continued to provide the Plaintiff with positive job references with some reservations. **Deposition of Rodney Lee Lunsford, taken February 20, 2007, at 77-78 ("Bill is the one I would choose because he holds good gross and can make you money. Now if you're looking for Bill to do other things other than that, then he's not the one for you.");** *see also* **Lunsford Second Declaration, ¶ 16.** The Defendant further contends that after Plaintiff was terminated, it was discovered that he had taken a cruise that had been awarded to the dealership by fraudulently printing Lunsford's name on the award certificate. The Defendant states had this incident been known before Plaintiff's termination, such action would have been taken on those grounds alone. **Lunsford Declaration, ¶ 39; Lunsford Second Declaration, ¶ 10.** Plaintiff denies any misconduct and states that he understood he was awarded the cruise because he coordinated the

advertising for Ken Wilson Ford with the Asheville Citizen-Times newspaper who was offering the cruise package. The Plaintiff states that Lunsford specifically asked him if he and his wife wanted to take the cruise and Lunsford signed the cruise agreement when Gourley accepted the offer. **Gourley Affidavit, ¶ 14;** *see also* **Advertiser Agreement Form,** *attached to* **Gourley Affidavit.**

After Plaintiff's termination, Riley Vernon took over Plaintiff's "desk manager" duties which included "structuring the initial financial figures of a new car sale." **Lunsford Declaration, ¶ 29.** He also assisted the sales staff by talking with customers on the sales floor. *Id.* **¶ 30;** *see also* **Deposition of William Riley Vernon, III, taken February 21, 2007, at 23-24.** At the same time Vernon was assigned Plaintiff's former "desk manager" duties, Marcia Jones, Defendant's finance manager, was promoted to a new car sales position as "back-up desk manager" to Vernon. Her duties included floor sales and ordering accessory parts. **Lunsford Declaration, ¶ 31; Vernon Deposition, at 20-21; Deposition of Marcia Hundley Jones, taken February 21, 2007, at 29, 37-38.** Because Vernon assumed the Plaintiff's "desk manager" position and due to his seniority with the dealership, Vernon was paid a higher salary than Jones.

**Lunsford Declaration, ¶ 30.** At the time of Plaintiff's termination, Jones was 30 years old, and Vernon was 51 years old. **Jones Deposition, at 35; Vernon Deposition, at 5.** Three or four months after the Plaintiff's termination, Defendant returned Jones to her former position as finance manager. **Jones Deposition, at 29 ("I was a bigger producer for the company in finance, much more experience there.");** *but see* **Vernon Deposition, at 21 ("She just didn't gel with the salespeople.").**

## III. DISCUSSION

In considering the grant of summary judgment, the Court must bear in mind that summary judgment should be used sparingly in employment discrimination cases. ***Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1004-05 (4th Cir. 1987).** However, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56;** *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242 (1986);** *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, **354 F.3d 277, 283 (4th Cir. 2004).** A genuine issue of fact may be found to

exist if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson, supra, at 248.** In considering the evidence, it must be assessed in the light most favorable to the non-moving party. **Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).**

The Court will first address Plaintiff's claim that his termination violated the NCEEPA, N.C. Gen. Stat. §§ 143-422.2, *et seq.*, which provides that it is "the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . age, [or] sex . . . by employers which regularly employ 15 or more employees." The parties do not dispute that the Defendant here regularly employs more than 15 persons.

"Given the similar language and underlying policy of § 143-422.2 and Title VII, 42 U.S.C. §§ 2000e, *et seq.*, the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2 insofar as they do not conflict with North Carolina statutes and case law." **Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (citing N.C. Dep't of Corr. v. Gibson, 308 N.C. 131, 301**

**S.E.2d 78, 82-85 (1983)).** Thus, in order to demonstrate a *prima facie* case of disparate treatment under § 143-422.2, the Plaintiff "must show by a preponderance of the evidence that: (1) [he] is a member of a protected class; (2) [he] was qualified for [his] job and [his] job performance was satisfactory; (3) [he] was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. [Gourley] must thus eliminate concerns that [he] was fired because of [his] performance or qualifications, two of the most common nondiscriminatory reasons for any adverse employment decision." *Id.*

**(citations omitted).** Under North Carolina law,

> [a]s a general rule, [Gourley] an employee-at-will[,] has no claim for relief for wrongful discharge. Either party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary or irrational reason. However, this doctrine is not without limits and a valid claim for relief exists for wrongful discharge of an employee at will if the contract is terminated for an unlawful reason or a purpose that contravenes public policy.

*Tompkins v. Allen*, **107 N.C. App. 620, 622, 421 S.E.2d 176, 178 (1992)**

**(citations omitted).** The issue of a violation of the NCEEPA is thus subsumed in the analysis of Plaintiff's claims of age and sex discrimination in violation of Title VII and the ADEA.

To succeed under his ADEA claims, Plaintiff must show by a preponderance of the evidence that his "age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" ***Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).**

The Plaintiff may establish an ADEA claim through a "pretext" framework that employs a burden shifting analysis used in Title VII cases under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  This requires a preponderance of the evidence showing that the Plaintiff meets the four-part test outlined above.  If the Plaintiff meets this burden, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action taken.  The employer's burden is one of production, not persuasion.  ***Hill*, *supra*, at 283.**  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant substantially discriminated against the plaintiff remains at all times with the plaintiff.'" ***Reeves*, *supra*, at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).**

In this case, Ken Wilson, owner of Defendant Ken Wilson Ford, Inc., testified that Plaintiff's "bad drinking problem and a monster gambling problem" were the sources of his absenteeism; that he often reported to work with a hangover; that he was habitually late for work and estimated that he reported to work as much as 50 to 60 percent of the time; and that he was consistently late or completely missed important staff meetings. **Deposition of Ken Wilson, taken February 20, 2007, at 30, 34, 84.**

Riley Vernon was 51 years old when he replaced the Plaintiff as desk manager and he had been in the car business for 30 years.  **Vernon Deposition, at 5, 7.**  Vernon testified that Plaintiff did not have "good work habits;" that he frequently reported to work late and only wanted to do "pencil deals, work the desk;" that he did not learn to use any of the computer programs Ford instituted in its dealerships; and he failed to learn "how to do anything that had to do with day-to-day operations, and a lot of it was very much computer-oriented[.]" *Id.* **at 14-15.**  When Plaintiff was terminated in August 2004, Vernon testified he was not surprised; however, he also testified that he was "surprised in some ways that it took as long as it did."  *Id.* **at 20.**

Marcia Jones was finance manager before she promoted to new car sales manager and also served as Vernon's "back up". He and others trained her in her new job. *Id.* According to Vernon, she was placed back in the finance department because she was unable to "gel" with the sales staff. *Id.* **at 20-21.**

Prior to working at Defendant's car dealership, Jones had been involved in various jobs in the finance departments and sales at other car dealerships and began working at Defendant's dealership in December 2003. **Jones Deposition, at 10-18.** She was hired at Ken Wilson's by Rodney Lunsford and expressed an interest in the new car sales manager position in order to earn more money and obtain more experience. *Id.* **at 18, 25.** She was 30 years old when the Plaintiff was terminated in August 2004. *Id.* **at 35.** She testified that she had the ability to perform the sales manager position because of her prior experience at other car dealerships and the fact she was able to work with Vernon who had more sales experience. *Id.* **at 37-38.**

Lisa Haynes testified that the Plaintiff did not provide assistance to other staff and she was aware of Plaintiff's chronic tardiness. **Deposition of Lisa Staggs Haynes, taken February 21, 2007, at 30-31, 35-36.** Hugh

Yarborough testified that the Plaintiff refused to talk with customers and frequently requested Yarborough and other managers to do so; that he frequently missed or arrived late for their training meetings on Mondays, Wednesdays and Fridays; that the Plaintiff had a hard time making the transition to using the computer; that he knew the Plaintiff was gambling because he overheard him call in his bets and he knew persons to whom Plaintiff owed money he had borrowed for his gambling habit; and that he knew Plaintiff "[drank] at lot at night." **Deposition of Hugh A. Yarborough, taken February 21, 2007, at 21-23, 28-29, 43-44.** Cecil Queen testified that the Plaintiff was "continually late." **Deposition of Cecil Queen, taken February 21, 2007, at 17.**

Plaintiff primarily relies on his own opinion that, based on his years of experience, his understanding of profits, and his personal value to the dealership, his work was satisfactory, met reasonable expectations and his firing was based on unjustified pretext. "In so doing [Gourley] ignores that the relevant question is whether [Defendant] believed [he] was doing a good job, not whether someone more familiar with [his] situation would have thought so." ***Ruff v. Target Stores, Inc.*, 2007 WL 805827, at \*7 (4th Cir. 2007) (citing *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)**

**(holding that an employee's own testimony cannot establish a genuine issue of material fact as to whether the employer's legitimate expectations were met, because "it is the perception of the decision maker which is relevant" (internal quotations and citations omitted));** *see also White v. Rice***, 46 F.3d 1130 (table), 1995 WL 20796 (4th Cir. 1995).**

Nor does the Plaintiff establish by believable evidence that he was replaced by a younger woman also outside his protected class on the basis of sex.  Deposition testimony of Ken Wilson, Riley Vernon, as well as Marcia Jones, shows that Plaintiff was replaced by Vernon, a 51 year old member of the protected class, who had years of experience in car sales. The younger female employee, Marcia Jones, was then moved to a backup sales manager position previously held by Vernon and not the position held by Plaintiff prior to his dismissal.  According to Dean Alspaugh who served as director of finance at the dealership, Jones was an above average employee who excelled in customer relations, was good at closing deals, and proficient in her use of Ford computer software.  **Deposition of Dean Alspaugh, taken February 27, 2007, at 82-86.**

Plaintiff admits that he has no knowledge of sex or age discrimination by Ken Wilson Ford excepting his own dismissal. **Plaintiff's Deposition, at 115-27.** He also admits that the position of sales manager is volatile in nature and that he has worked with at least six different new car sales managers over the years. *Id.* **at 87-88.**

While Plaintiff has shown that a younger person by eight years, but still a member of his protected class of those over 40 years of age, replaced him, and that a 30-year old female took over a part of his duties, he has presented no evidence that his firing was motivated by age or sex rather than non-discriminatory reasons. *See White v. Seventh Judicial Circuit of Maryland*, **846 F.2d 75 (table), 1988 WL 41047 (4**[th] **Cir. 1988).** Poor work performance and rules infractions such as chronic tardiness and unwillingness to assist other employees when properly asked to do so, are legitimate non-sex or age based reasons for terminating an employee and do not constitute pretext for sex or age discrimination. *Hill, supra*, **at 297-99.** Neither age nor sex has been shown to be a motivating or substantial factor in the decision to terminate Plaintiff's employment. *Smith v. Univ. of N.C.*, **632 F.2d 316 (4**[th] **Cir. 1980).**

For the foregoing reasons, the Court concludes that Plaintiff has failed to establish a *prima facie* case of discrimination under either the ADEA, Title VII or the NCRRPA, and summary judgment for the Defendant will be allowed.

On April 24, 2007, the Plaintiff moved to strike the Defendant's Reply to Plaintiff's response to the motion for summary judgment as untimely. *See* **Plaintiff's Motion to Strike, filed April 24, 2007;** *see also* **Defendant's Response Memorandum in Opposition to Plaintiff's Motion to Strike, filed April 25, 2007.** After review of the Plaintiff's motion and Defendant's response thereto, the motion is denied for the reasons stated in the Defendant's response. Defendant also objects to the authenticity of defense counsels' signatures used on the Plaintiff's motion to strike. It appears to the Court that such signatures were added by clerical error; however, in view of the Court's ruling on the Plaintiff's motion, Defendant's objection is denied as moot.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is **ALLOWED**; a Judgment dismissing this action is filed herewith.

Signed: June 11, 2007

Lacy H. Thornburg
United States District Judge